E. W. LA PLANT, Appellee, v. N. K. BEECHLEY, Appellant, SECURITY SAVINGS BANK, Intervenor, Appellee.

**MORTGAGES:** Foreclosure—Nonpayment of Interest—Part Payment after Election—Effect. An election, by the holder of a mortgage and under an accelerating clause so authorizing, to declare the entire debt due for the nonpayment of interest, is not waived by the acceptance, subsequent to such election, of part payment of said interest.

**MORTGAGES:** Foreclosure—Election to Declare Debt Due—Election by Non-Holder. A mortgage which authorizes the "*holder*" to elect to declare the entire debt due for nonpayment of interest, does not continue such right in the original payee and holder *after* he has transferred the same to a good-faith holder as collateral security for a debt of his own.

**MORTGAGES:** Foreclosure—Accelerating Clauses—Burden of Proof. One seeking foreclosure under an accelerating clause relative to the nonpayment of interest, has the burden of proof to show the existence of each and every fact upon which rests the right to declare the entire debt due.

**JUDGMENT:** Conclusiveness—Non-Accrual of Action—Dismissal—Abatement. Judgments should clearly distinguish between matters in abatement and matters in bar. So held where the party suffered a judgment of dismissal because his action *had not yet accrued.* (Sec. 3771, Code, 1897.)

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

JANUARY 11, 1918.

SUIT to foreclose a mortgage. The answer put in issue its alleged maturity, and, by way of counterclaim, prayed

judgment for $4,698.77 in damages consequent on plaintiff's failure to satisfy two mortgages on which there remained owing such sum, and for $18,000 alleged to have been obtained by deceit in misrepresenting the value of certain lands in New Mexico. The Security Savings Bank of Cedar Rapids intervened, as assignee of the mortgage sought to be foreclosed, and prayed that its rights therein be protected. On hearing, the counterclaims were dismissed, and decree foreclosing the mortgage was entered, and judgment entered against defendant on the note secured for $14,401.02, of which plaintiff was held to be entitled to $8,093.02, and the intervenor, $6,008. The defendant appeals.—*Affirmed in part; reversed in part.*

*Redmond & Stewart,* for appellant.

*Crissman, Linville & Churchill, Don Barnes,* and *Robert Rodgers,* for appellees.

LADD, J.—I. On the 25th day of October, 1912, Edward La Plant, plaintiff, and Nathaniel K. Beechley, defendant, entered into an agreement whereby Beechley undertook to convey to La Plant a farm of 448 acres, near Mt. Vernon, together with all grain crops, live stock, and machinery thereon, in consideration for which, La Plant promised to deed to Beechley ten tracts of improved property in Cedar Rapids, one subject to a mortgage of $5,000, and another subject to a mortgage of $2,500, and also 1,832 acres of land in San Miguel County, New Mexico. Except as stated, all property was to be free from incumbrance; but La Plant agreed to accept or negotiate mortgages on the Cedar Rapids property to the extent of $40,000, out of the proceeds of which the mortgage of $30,000 on the 448 acres of land, accrued interest, and costs, foreclosure having been commenced, together with judgment liens, might be satisfied; and La Plant was allowed to negotiate loans of building and loan associations, if unable to procure same elsewhere. Pos-

session was to be given November 1st following; La Plant, however, to carry out Beechley's contracts with hired help on the farm, and to retain possession of No. 1027 Fifth Avenue until September 1, 1915, without rental, reserving playhouse in rear, the factory at the rear of No. 602 Eastlack Place for one year, with option of renting at a monthly rental thereafter until May 1, 1913. This contract was performed, as mutually agreed, conveyances made, and mortgages executed, as proposed. Among the mortgages executed by Beechley to La Plant was one covering "A part of Lot Two (2) of Hormel and Cobbens Sub-division of Outlot Eight (8) of original town (now city) of Cedar Rapids," to secure a promissory note of $13,000 executed by Beechley to La Plant, dated November 1, 1912, and payable five years thereafter. The mortgage contains this clause:

"It is further agreed that if default be made in the payment of any of said principal or interest for the space of ninety days after the same becomes due * * * then the whole indebtedness secured hereby shall become due and collectible at the election of the holder hereof and this mortgage may thereupon be foreclosed for the whole of said money."

1. MORTGAGES: foreclosure: nonpayment of interest: part payment after election: effect.

The first year's interest was paid. As a portion of the semi-annual interest, payable May 1, 1914, remained unpaid, La Plant elected to declare the note of $13,000, and mortgage securing its payment, due, and began this suit to foreclose the same, October 11, 1914. The only defenses interposed are:

La Plant credited $120 on such interest, September 10, 1914, and, on the same day, Beechley mailed him a check on the Cedar Rapids National Bank for $100, which La Plant collected on the 18th of the same month. On the day before, attorneys for plaintiff had written Beechley that La Plant elected to declare the mortgage due, owing to default

for more than 90 days in the payment of interest, and advised him that foreclosure proceedings would be begun at the next term of court, unless the indebtedness were paid in full. Counsel for appellant argue that collecting the above check following this notice was a waiver of the election to declare the debt due; but we do not think so. Beechley owed the indebtedness, regardless of any election, and the check merely satisfied in part what interest was due, had there been no election. Accepting part was not a waiver of what was still owing, and on account of which the election was still good. Two checks, one for $170 and another for $6.15, the last being interest on interest, were tendered, September 18th, but returned by La Plant's attorneys.

After the note had become payable through the election so to declare, its maturity was not obviated by the subsequent payment of interest. Whatever La Plant's motives may have been, he merely took advantage of the terms of the contract (the mortgage), not by way of forfeiture, as suggested by plaintiff; and, if then the holder of the note and mortgage, had the right so to do. *Swearingen v. Lahner,* 93 Iowa 147; *Moore v. Crandall,* 146 Iowa 25.

The trouble is that La Plant was not 
2. MORTGAGES: shown to have been the holder of the note foreclosure: election to de- and mortgage when the attorneys elected in clare debt due: election his behalf to declare the entire indebtedness by non-holder. due. On November 16, 1912, he had, by written assignment duly acknowledged, transferred these to the Security Savings Bank; and, as appears from the evidence, this was as collateral security for the payment of an obligation of La Plant's to the bank, then amounting to $10,000, but since reduced somewhat. Manifestly, the bank thereupon became the holder of these instruments; for it is agreed that it acquired them in good faith and for value, and was a holder in due course, and so continued.

Under the terms of the mortgage, the indebtedness becomes due and collectible on default in the payment of interest for 90 days only "at the election of the holder thereof." La Plant was not the holder at the time the attorneys in his behalf elected to declare the paper due.

But counsel for appellee argue that they were authorized by the bank to declare the indebtedness due. The only evidence bearing thereon was that of W. L. Crissman, who testified that his firm was employed by La Plant about the middle of September, 1914; that he told the firm that the bank had the papers, and to do what was necessary to be done; that the witness saw the vice-president of the bank, and "the foreclosure was begun with their consent and approval," the bank insisting that suit be brought in La Plant's name. This does not touch the matter of exercising the option of declaring the entire indebtedness payable, but amounts to no more than a showing of subsequent acquiescence in the proposed foreclosure; for it was not made to appear that this arrangement was made prior to the notice of election by the attorneys in their letter to Beechley, nor prior to the tender of the checks which were returned. The burden of proof was upon the appellees to show that the indebtedness was due, and this they failed to do. Conceding, without deciding, that beginning the suit amounted to such election, this was long after the tender of the balance owing on interest. The bank intervened, October 7, 1915, but prayed merely that its interests be protected, without allegations with reference to the maturity of this or any other payment of interest; and therefore, election is not to be inferred therefrom, as claimed by appellee. No objection was interposed to the checks of $170 and $6.15, as not being equivalent to money; and, as these were tendered before the holder of the note and mortgage was shown to have elected to declare these instruments due, or authorized

*3. Mortgages: foreclosure: accelerating clauses: burden of proof.*

another so to do, the court erred in entering judgment and decree of foreclosure.

II. The defendant, by way of counterclaim, alleged that the plaintiff represented that the 1,832 acres of land in New Mexico were worth $13 per acre; that this was knowingly false, and made to induce defendant to make the exchange; and that he so did in reliance on such representation. The testimony of defendant tends to support these allegations, while that of Mally, the broker, was that he knew nothing of any such statements, and that defendant, in trading, did not regard this land as of much value, and merely took a chance on it; and La Plant denied having made any representations such as testified to. The defendant had had considerable experience in handling real estate, and Mally's explanation that he regarded this land as "velvet" if the deal went through is not improbable. At any rate, the apparent preponderance is against defendant; and, as the evidence of the witnesses was taken in open court, we are not inclined to interfere with the dismissal of this part of the counterclaim.

**4. JUDGMENT: conclusiveness: non-accrual of action: dismissal: abatement.** III. La Plant undertook in writing, November 4, 1912, to pay and cause to be satisfied two certain mortgages on two tracts of land in Cedar Rapids within one year. He did not do so, and defendant prayed judgment for what was then owing thereon, or $4,235.08. Beechley had executed second mortgages thereon to La Plant, covering a portion of the amount the latter raised out of which to satisfy incumbrances on the farm. To procure the money, however, La Plant negotiated the first loan on which the balance remained unpaid from the Perpetual Savings & Loan Association. Though this was to be discharged through the payments of sums weekly, La Plant undertook with Beechley to do so within a year. Had the latter satisfied the balance owing, he would have been entitled to recover the amount paid. Without so doing, it would seem

that the record should show that suit on this portion of the counterclaim was abated, and that the dismissal was not on the merits. Section 3771, Code; *Garretson v. Ferrall & Hawkins Bros.,* 92 Iowa 728.

The judgment and decree of foreclosure is reversed, the dismissal of the counterclaim affirmed, with modification as indicated, and the cause remanded for decree and judgment in harmony with this opinion.—*Reversed in part; affirmed in part.*

PRESTON, C. J., EVANS, GAYNOR, and SALINGER, JJ., concur.